UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nancy E. Cohen,

            Plaintiff,

    v.

Mortgage Electronic Registration
Systems, Inc.; WMC Mortgage
Corp.; and Saxon Mortgage
Services, Inc.,

            Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-1394 ADM/JSM

___

Lawrence A. Moloney, Esq., Southern Minnesota Regional Legal Services, St. Paul, MN, on behalf of Plaintiff.

Ann T. Taylor, Esq., and D. Brian O'Dell, Esq., Bradley Arant Boult Cummings, LLP, Birmingham, AL, and Sarah E. Madsen, Esq., Larson King, LLP, Minneapolis, MN, on behalf of Defendants Mortgage Electronic Registration Systems, Inc. and Saxon Mortgage Services, Inc.

___

## I. INTRODUCTION

On September 1, 2009, the undersigned United States District Judge heard oral argument on Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Saxon Mortgage Services, Inc.'s ("Saxon") (collectively "Defendants") Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment [Docket No. 44] ("Motion"). In her Amended Complaint [Docket No. 21], Plaintiff Nancy E. Cohen ("Cohen") asserts claims for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §§ 325D.43-48; and Minn. Stat. § 580.25. Cohen also asserts claims for breach of contract and breach of good faith and fair dealing. For the reasons set forth below, Defendants' Motion is granted.

## II. BACKGROUND

Cohen is the owner of a home in St. Paul, Minnesota. Am. Compl. ¶ 2. MERS is a Delaware corporation headquartered in Virginia. Id. ¶ 5. Saxon, a Texas company, is a servicer of home mortgages, including the home mortgage for Cohen's St. Paul home. Id. ¶ 4.

Cohen purchased her home in 1989 for approximately $75,000. Defs.' Mem. in Supp. of Mot. [Docket No 45], Ex. 3 (Cohen Depo.) 58:3-8. In 2004, Cohen refinanced her home in a mortgage loan transaction with Defendant WMC Mortgage Corporation ("WMC") and MERS finalized on December 15, 2004. See id., Ex. 1 (Adjustable Rate Note), Ex. 2 (Mortgage); Am. Compl ¶ 10. Although Cohen requested a 30-year, fixed-rate mortgage, WMC and MERS told her that she did not qualify for a fixed-rate mortgage and that she would have to accept an adjustable-rate mortgage. Am. Compl. ¶ 8.

Sometime in 2007, Saxon became the loan servicer on Cohen's mortgage and in November 2007, notified Cohen that she was in default for $11,416.48 on her mortgage. Defs.' Mem. in Supp. of Mot., Ex. 19; Cohen Aff. [Docket No. 65] ¶ 9. Cohen disputed the amount quoted by Saxon as being due on the mortgage, and she submitted a payment of $4,000 on December 6, 2007, which was posted to her account on December 20, 2007. Cohen Aff. ¶¶ 10, 13-14; Defs.' Mem. in Supp. of Mot., Ex. 22.

MERS commenced non-judicial foreclosure proceedings and scheduled a foreclosure sale for April 22, 2008. Cohen Depo. 123:6-9; Am. Compl. ¶ 13. In an April 8, 2008 letter, Saxon informed Cohen that she owed nine monthly payments on her mortgage, totaling $27,380.55; Cohen claims that she was only eight months behind. Cohen Aff. ¶ 20. On April 21, 2008, Cohen sent a notice to Defendants "rescinding the mortgage loan transaction based on the failure

2

[by WMC] to provide . . . material disclosures in compliance with [TILA]." Am. Compl. ¶ 15. That same day, Cohen commenced this action in state court. Id. ¶ 22. The foreclosure sale scheduled for April 22, 2008, was postponed.[1] Id. On May 20, 2008, the action was removed to this Court. The foreclosure sale was ultimately held on June 22, 2008, allegedly without Cohen's knowledge. Id. Thus, the statutory six-month redemption period expired on December 22, 2008.

### III. DISCUSSION

In February 2009, the parties stipulated to the dismissal of Cohen's TILA claim (Count I) with prejudice. Joint Stipulation [Docket No. 37]. Also, Cohen has conceded that a recent Minnesota Supreme Court decision precludes her claim for violations of Minn. Stat. § 580.25 (Count III) as a matter of law. See Pl.'s Resp. [Docket No 79] at 20. WMC apparently is no longer in business and, consequently, was never served with this action. See id. at 1 n.1. Furthermore, Cohen agreed at oral argument that entry of judgment in favor of MERS is appropriate. Therefore, what is currently at issue is Cohen's claims against Saxon in Counts II, IV, V, and VI. Because the Motion argues alternatively for judgment on the pleadings or summary judgement, and because the parties have both submitted and cited material outside the pleadings, the Court will treat the Motion as one for summary judgment.

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

---

[1] There is a dispute about the terms of the postponement. Defendants contend that the foreclosure sale was postponed until May 15, 2008, to give them time to determine how to respond to Cohen's April 21, 2008 letter. See Defs.' Mem. in Supp. of Mot. at 14. Cohen claims that she and her attorney understood that the foreclosure sale would be postponed during the entire pendency of the lawsuit Cohen initiated on April 21, 2008. See Pl.'s Resp. at 12.

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     FDCPA**

Count IV of the Amended Complaint asserts a claim for violations of the Fair Debt Collection Practices Act. Saxon moves for summary judgment on this claim, arguing that it is not a "debt collector" as that term is defined in the FDCPA. Defs.' Mem. in Supp. of Mot. at 16. Because it is not a "debt collector," Saxon argues, there has been no violation of the FDCPA. See Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103, 2007 WL 2695795, at *2 (D. Minn. Sept. 12, 2007).

The FDCPA defines a "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Courts have held, however, that "a debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned*." Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (quotation omitted) (emphasis added); see

4

also Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); Camillo v. Washington Mut. Bank, F.A., 2009 WL 3614793, at *10 (E.D. Cal. Oct. 27, 2009) (stating that "the law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the [FDCPA]") (quotation omitted) (alteration and omission in original).

Cohen responds that merely because Saxon is a mortgage servicing company does not determine whether it is a "debt collector" under the FDCPA; rather, the analysis also requires that the debt not be in default at the time it was assigned to Saxon. See Castrillo v. Am. Home Mortgage Servicing, Inc., ___ F. Supp. 2d ___, 2009 WL 3837876, at *4 (E.D. La. Nov. 16, 2009) ("The relevant legal issue is when [the defendant] took control of [the] mortgage for servicing. If [it] took the mortgage for servicing before [the] default, it is not a debt collector subject to the FDCPA. . . . If it took the mortgage after [the] default, it would be a debt collector.") (citation omitted). Cohen concludes that because "Defendants have submitted no evidence that the debt was [not] in default at the time the servicing responsibilities were assigned to Saxon," there is a fact issue as to whether Saxon falls beyond the definition of "debt collector." Pl.'s Resp. at 15.

The burden is not on Saxon to present evidence showing that it is not a "debt collector." Rather, in opposing summary judgment, the burden is on Cohen to present evidence showing that Saxon is a "debt collector" because the mortgage was in default when Saxon took the mortgage for servicing. Cohen has failed to do so. In similar circumstances perhaps not

5

coincidentally involving Saxon, courts have ruled that Saxon is not a "debt collector" under the FDCPA. See Reynoso v. Paul Fin., LLC, No. 09-3225, 2009 WL 3833298, at *10 (N.D. Cal. Nov. 16, 2009) (holding that Saxon is not a "debt collector" because it is a mortgage servicer and the plaintiff failed to allege when Saxon began its relationship with the loan.) Pineda v. Saxon Mortgage Servicing, Inc., No. SACV 08-1187, 2008 WL 5187813, at *3 (C.D. Cal. Dec. 10, 2008) (holding that a plaintiff's FDCPA claim against Saxon failed because Saxon, as a mortgage servicer, is specifically excluded from the FDCPA's definition of "debt collector" and the plaintiff failed to allege that the debt was in default at the time it was assigned to Saxon).

Because Saxon is a mortgage servicer and Cohen has not proffered evidence to show that the mortgage was in default at the time Saxon became the servicer on the mortgage, Saxon is not a "debt collector." Therefore, Cohen's FDCPA claim cannot survive summary judgment.

**C.     MDTPA**

In Count VI of the Amended Complaint, Cohen asserts a claim for violations of the Minnesota Deceptive Trade Practices Act. Cohen alleges that Saxon's conduct in connection with the servicing of her mortgage and the foreclosure violated Minn. Stat. § 325D.44, subd. 1(13), which provides that "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person . . . engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

Saxon argues that the MDTPA claim fails as a matter of law because Cohen has failed to present evidence showing that Saxon engaged in conduct prohibited by the MDTPA. At least one court has confronted the issue of what type of specific confusion or misunderstanding is actionable under Minn. Stat. § 325D.44, subd. 1(13). See In re Simitar Ent't, Inc., 275 B.R. 331,

6

349 (Bankr. D. Minn. 2002). In that case, the court concluded that based on the other 12 enumerated examples in section 325D.44, subd. 1, "it is clear that 'confusion' within the statute's ambit is the mistaking of the identity of a product, or one of a product's essential aspects, for that of another product." Id.[2] Indeed, the majority of the enumerated examples refer to confusion, deception, or misunderstanding regarding the source, sponsorship, approval, certification, affiliation, connection, association, designation of geographic origin, ingredients, uses, benefits, number of sponsors, newness, status, quality, standard, grade, style, or model of goods or services. Minn. Stat. § 325D.44, subd. 1(1)-(7). The remaining examples refer to disparaging the goods or services of another, advertising goods or services with no intent to sell them as advertised or no intent to supply reasonably expectable public demand, making misleading statements concerning price reductions, and implying or suggesting while attempting to collect a delinquent account that a consumer's health care services will be withheld. Id., subd. 1(8)-(12). Thus, the language, "any other conduct which *similarly* creates a likelihood of confusion or misunderstanding," indicates that subd. 1(13) addresses the same type of confusion, misunderstanding, or deception addressed in the other 12 enumerated examples and does not contemplate entirely different types of confusion, misunderstanding, or deception.

In the instant case, there is no evidence that Saxon engaged in conduct that caused Cohen to experience confusion or misunderstanding about Saxon's services that falls within the

---

[2] In Baker v. Sunbelt Business Brokers, the Minnesota Court of Appeals seemingly agreed with the bankruptcy court's conclusion in Simitar Entertainment regarding what is actionable confusion under the MDTPA, although cautioning that contrary to the potential implication of the bankruptcy court's language in Simitar Entertainment, the MDTPA is not limited to confusion regarding products or essential aspects of products but also applies to services and essential aspects of services. No. A07-0514, 2008 WL 668608, at *7, n.3 (Minn. Ct. App. Mar. 11, 2008).

recognized scope of the MDTPA. An affidavit submitted by Cohen in support of her opposition to Defendants' Motion avers the confusion Cohen allegedly experienced was confusion about how Saxon calculated the amount due on Cohen's mortgage and confusion regarding the manner in which Cohen's $4,000 payment in December 6, 2007, was posted and applied to her account. Cohen Aff. ¶¶ 15-16. Cohen has cited no authority, nor is the Court aware of any, for the proposition that this sort of confusion about the mechanics of a mathematical calculation and the posting and application of payments falls within the purview of the MDTPA. Accordingly, Saxon is entitled to summary judgment on Cohen's MDTPA claim.

**D.     Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing**

Saxon also moves for summary judgment on Counts V and II of the Amended Complaint alleging breach of contract and breach of the duty of good faith and fair dealing. At oral argument, Cohen clarified that her contractual claims are based on three alleged breaches: (1) Saxon failed to provide, as promised, a loan history and accounting regarding the mortgage; (2) Saxon did not post Cohen's December 6, 2007 payment of $4,000 until December 20, 2007, and did not apply the payment until January 2008; (3) Saxon wrote Cohen's attorney on July 28, 2008, that the foreclosure sale had been postponed during the pendency of litigation, but the foreclosure sale had occurred on June 22, 2008;[3] and (4) Saxon agreed not to evict Cohen from

---

[3] An affidavit by Cohen's attorney states, "I understood that the sheriff sale had been delayed during the pendency of the suit" based on a July 28, 2008 letter advising that Saxon "has postponed the sheriff's sale and foreclosure proceedings on the real property at issue." Moloney Aff. [Docket No. 51] ¶ 19. Although the affidavit states that a copy of this July 28, 2008 letter is attached as an exhibit 10, the letter does not appear at exhibit 10, nor anywhere else in the materials that have been submitted to the Court. Nevertheless, even accepting the description in the affidavit of the statements that were made in the July 28, 2008 letter and the events that transpired, the July 28, 2008 letter does not support a claim for breach of contract. It may suggest that Saxon represented to Cohen and her attorney that the foreclosure sale had not yet

her home during the pendency of litigation, but Saxon nonetheless scheduled an unlawful detainer action that was heard on January 23, 2009.[4]

Saxon argues that the undisputed evidence is that a contract never existed between it and Cohen, and, thus, there can be no breach. Cohen responds that obligations relating to the servicing of the mortgage were transferred to Saxon when it became the servicer of the mortgage. Pl.'s Resp. at 18-20. Specifically, Cohen cites language in the Mortgage providing that "[i]f the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer." Mortgage ¶ 20. Cohen concludes that "if one looks at all of the contract documents . . . Saxon is the party who is responsible for and liable for servicing violations." Pl.'s Resp. at 20.

If there is a legal argument to establish a contractual relationship between Saxon and Cohen sufficient to maintain a claim for breach of contract, no such argument has been argued or supported with any authority here, and it is not the Court's function to "conduct research . . . or make a party's arguments for [her]." See Rayyan v. Sharpe, No. 1:08-cv-324, 2008 WL 4601427, at *7 (W.D. Mich. Oct. 15, 2008); cf. Viking Supply v. Nat'l Cart Co., Inc., 310 F.3d 1092, 1099 (8th Cir. 2002) ("[I]t is not this court's job to research the law to support an

---

occurred when that was untrue, but no evidence has been submitted showing that prior to the June 22, 2008 foreclosure sale, the parties reached an agreement establishing the time period for the postponement and that Saxon caused the foreclosure sale to occur prior to the end of that period.

[4] The unlawful detainer action was dismissed, and Saxon has not evicted Cohen from her home. Therefore, to the extent a valid agreement exists in which Saxon agreed not to evict Cohen from her home, there has been no breach of such an agreement.

9

appellant's argument."). Notwithstanding Cohen's failure to advance an argument to establish contractual privity between her and Saxon, the more fundamental defect to Cohen's claim is that she is unable to identify a specific provision from any contract in the record, regardless of whether Saxon was a party, that was breached by virtue of Saxon's alleged conduct. Neither the Mortgage nor the Adjustable Rate Note identify or explain the obligations that servicers of the mortgage owe to the borrower. In the absence of a contract setting forth those claimed obligations, there can be no contractual claim for breach of the obligations. See Motley, 557 F. Supp. 2d at 1013 (dismissing claims of breach of contract and breach of the implied covenant of good faith and fair dealing against a mortgage servicer when the plaintiff failed to attach the allegedly violated contract to the complaint or to plead the specific provisions that were allegedly breached); Crosstown Holding Co. v. Marquette Bank, N.A., No. A04-1693, 2005 WL 1154271, at *5 (Minn. Ct. App. May 17, 2005) (holding that because no contract existed between the parties, the claim for breach of the implied covenant of good faith and fair dealing necessarily failed) (citing Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 256 (8th Cir. 1994)).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that MERS and Saxon's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment [Docket No. 44] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    S/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 1, 2009.